**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | **Case No.: 23-cr-45-TNM** |
| **v.** | : | |
| | : | |
| **JOHN EDWARD CROWLEY,** | : | |
| | : | |
| **Defendant.** | : | |

**UNITED STATES' TRIAL BRIEF**

The United States of America, by and through its attorneys, respectfully submits this trial brief in advance of the October 16, 2023, trial scheduled before this Court in this case.

**I.     The January 6 Capitol Riot and the Defendant's Actions**

The Court is well familiar with the events of January 6, 2021. The defendant, John Edward Crowley, was among the group of rioters who illegally entered the U.S. Capitol grounds on January 6, 2021. Crowley obstructed, impeded, and interfered with police, as he laid siege on officers as they protected the Capitol at the "tunnel." The "tunnel" is a stairway that had been converted into a narrow entryway due to construction of the temporary inaugural platform on the Lower West Terrace of the Capitol building. Some of the most violent assaults on law enforcement officers on January 6, 2021, took place in the tunnel.  Rioters at the tunnel battled officers for hours as they attempted to storm the Capitol building.

On December 25, 2020, Crowley,[1] under the Instagram account "eddiepalmfronds," posted the following image and comment to his Instagram:

---

[1] The message below has a sign off of "Edward." Crowley's middle name is Edward. The parties have stipulated to the authenticity of Crowley's social media.



All, Please consider donating for a great cause, Patriots will go to DC Jan, 6th to show their patriotism and support during the time Congress will count Electoral College votes as this was of course a fraudulent election. We want to protect the people and Trump supporters as we stand up for our liberty and our Constitution. We are in need of you all to help us fundraise for this event. We also are in need of tremendous support from all of you for our members to deploy, help secure and defend the people, Please consider donating as we are in need of financial support, Donations will be going towards hotel stays, vehicle rentals, transportation gas fees, food, tactical gear, etc, Link in bio, Thanks, Good Bless Edward

Crowley posted on Instagram in support of the Guardians of Freedom ("GoF" or "GOF"), of which he is a member.  GoF is an organization loosely affiliated with the Three Percenters.[2]

---

[2] According to the website of the Anti-Defamation League:

> Three Percenters are part of the militia movement, which supports the idea of a small number of dedicated "patriots" protecting Americans from government tyranny, just as the patriots of the American Revolution protected early Americans from British tyranny. The Three Percenter concept, created in 2008, is based on an inaccurate historical claim that only three percent of Americans fought in the Revolutionary War against the British. Three Percenters may join or form traditional militia groups but often form non-paramilitary groups or online networks. Many are not associated with any particular groups. The Three Percenter concept both contributed to and benefited from the resurgence of the militia movement that began in 2008.

https://www.adl.org/resources/backgrounder/three-percenters (visited September 12, 2023).

Crowley drove from Florida to Washington, D.C on January 5, 2021. He along with other members of the GoF[3] stayed at the Hampton Inn at 901 6th St NW in Washington, D.C. Crowley messaged his wife on January 1, 2021, with his lodging details. These details included a packing list with items such as body armor, helmets, balaclavas/ face covers "to secure your identity," radios, mace/pepper or bear spray, a knife up to 3 inches in length, and squirt bottles for milk (eye wash):


[SPACE LEFT BLANK INTENTIONALLY.]

---

[3] The screen shot below shows that the hotel reservation was made for "GOF" an abbreviation of Guardians of Freedom.

... 



Ringtone

🔊

***CAPTAIN IN PORTLAND (Hello / Communication / EOF line)

***TWELVE / _____ GAME-FRANCIS

SUNFLOWER: coordinate donations from members, and other resources and ensure we have enough by go time. Please have all donations at the meeting place.

## CONFIDENTIAL

**EVENT NOTICES – REMINDERS**

- LODGING: Hampton Inn Washington DC Downtown – Convention Center
  -901 6th Street NW, Washington DC 20001
  -Phone: (202) 842-2500
  -Reservation under: Black Block
  -GOF has reserved the entire 3rd floor.
  -Comes with a Free Hot Breakfast in the morning.
  -Parking is available at the hotel for $25 (normally $50)

- MEET UP LOCATION for TRANSPORTATION TO EVENT
  o Tues, 01/05 8:00 am (likely to change – stay up to date in war room)
  o 35615 N. Treasure Island Ave, Leesburg, FL

- MEET UP LOCATION at EVENT
  o Tues, 01/05 10:00 pm (likely to change – stay up to date in war room)
  o In front of our hotel (Hampton Inn DC – 901 6th St NW)

- Transportation (vans) are being provided to members who need it. Pick up/drop off is at meeting place above. Personal vehicles can be left at the meeting place and will be secure.

- Packing List: (More to come)
  o Cold weather gear – Layers
  o Body Armor
  o Helmet
  o Balaclava / Face Cover (Required to secure your identity)
  o Communications Device (cell, radio, gps)
  o Maps
  o Battery Booster Pack (more than one is often needed)
  o USB connectors for charging.
  o First Aide / Trauma Kit.
  o Mace / Pepper or Bear Spray
  o Knife is allowed up to 3" (nonautomatic)
  o Flags/Poles
  o Squirt bottles for milk (eye wash)
  o Meds

HOTEL

Records received from Hilton, the parent company of Hampton Inn, pursuant to legal process confirm that "Ed Crowley" stayed at the Hampton Inn from January 5-7, 2021, under the Black Group[4] reservation.

On January 4, 2021, Crowley sent another message to his wife. This message included a picture of him and his wife. *See* picture and text message below. In this picture, Crowley was wearing a two-tone USA baseball cap and a scarf around his neck. The cap appears to be the same cap Crowley wore on January 6, 2021, when he attacked police officers in the Lower West Tunnel. Additionally, the scarf is similar to the one he wore on January 6, 2021. Both the hat and a similar scarf were recovered at his home pursuant to a search warrant.





---

[4] Hampton Inn records refer to the hotel block reservation as the Black Group.

On January 6, 2021, Crowley attended the former president's "Stop the Steal" rally at the Ellipse. At this rally, the former president and others spoke about the recent presidential election and the events that were set to take place at the Capitol that day: namely, the certification of the electoral college vote. Crowley sent a message and a picture of the rally from his phone at 7:19 p.m. EST on January 6, 2021, stating "Dat Trump":



Starting at approximately 12:55 p.m. on January 6, 2021, members of the mob began to penetrate the restricted perimeter of the U.S. Capitol grounds.  As the mob first approached after

breaking past the Peace Circle barriers, vastly outnumbered police officers attempted to establish and maintain a defensive barrier on the Lower West Plaza to keep the mob away from the Capitol and protect the proceedings and lawmakers inside. As more rioters approached and some rioters became increasingly aggressive with the officers, the line eventually fell back to the Upper West Plaza or the foot of the inaugural stage.



*Map of U.S. Capitol and Grounds with Upper West Plaza highlighted (red box)*

At about 2:29 p.m., the rioters' aggression caused the police line to retreat. Rioters pushed forward, forcing officers to fall back until the officers were pushed up against a wall. Officers eventually escaped up a temporary staircase that had been built as part of the inaugural stage construction and regrouped on the Lower West Terrace.



*Map of U.S. Capitol and Grounds with Lower West Terrace, which is also known as the Inaugural Stage, highlighted (red box)*

After the rally, Crowley made his way to the Capitol. Prior to his entry onto the Lower West Terrace, he is visible moving near the northwest steps through the crowd. Crowley walked with individuals wearing tactical gear, the same type of gear mentioned in the GoF event notice/lodging details Crowley sent his wife on January 1, 2021:



*Note Crowley in the red circle wearing a USA ballcap moving with three other individuals wearing tactical gear.*
.

By about 3:30 p.m., Crowley had made his way into the Lower West Terrace. At 3:34 p.m., the defendant and another rioter converged at the Lower West Terrace tunnel. Before entering the tunnel, Crowley was able to see the chaos taking place at the tunnel. There was a rioter literally hanging from the wall when Crowley was at the mouth of the tunnel. Here is a picture of Crowley at the mouth of the tunnel at about 3:40 p.m. with one of his compatriot rioters:



*Note Crowley in the red circle. The other individual circled in yellow appears to be the same person as the individual immediately behind Crowley in the screenshot directly above.*

The tunnel was a temporary corridor entryway that led into the U.S. Capitol building and that was created as part of the construction of the inaugural platform. At the end of the tunnel were two sets of glass double doors, emblazoned with the sign "Members Entrance Only," which opened directly into the heart of the U.S. Capitol building. After the police perimeter was breached on the West Plaza, many of the police officers retreated into the tunnel to regroup. However, the rioters – including the defendant – followed them up to the Lower West Terrace and streamed into the tunnel in large numbers where they began to fight the police in an effort to get into the U.S. Capitol building.  By 2:43 p.m., one of the "member's only" glass doors had been shattered and both doors were open, exposing the very center of the Capitol building. A group of officers barricading their bodies in the tunnel was the only barrier between the rioters in the tunnel and free access to the Capitol building.

By 3:55 p.m., Crowley stood by as a rioter in a black jacket and hat attacked police at the mouth of the tunnel.



At 3:56 p.m., Crowley bent forward, braced himself, and began pushing against the officers in the tunnel.



Crowley then supported a rioter who had just been kicking officers by allowing the rioter to stand on Crowley's shoulders.



By 4:06 p.m., Crowley had fought his way in the tunnel and engaged Officer Henry Foulds in a pitched battle as he attempted to push past Officer Foulds in the crushed confines of the tunnel. Crowley continued to push despite being sprayed by another officer.



At about 4:08 p.m., after police had pushed him back to the mouth of the tunnel, Crowley then took a riot shield and passed it back into the crowd of rioters.[5]

---

[5] These facts are the basis for Count Two which charges Crowley with Theft of Government Property and Aiding and Abetting, in violation of Title 18, United States Code, Sections 641 and 2.



At 4:09 p.m., after about 13 minutes of intense physical combat with police, Crowley temporarily left the mouth of the tunnel. At approximately 4:17 p.m., undeterred by the chemical spray and his prior expulsion from the depths of the tunnel, Crowley approached the mouth of the tunnel again with other individuals wearing tactical gear. As he did so, he shouted, "C'MON!, C'MON!, C'MON!" to other rioters behind him, urging them to join him as he again attempted to force his way past the police line.



*Crowley in the red circle as he screamed, "C'MON, C'MON, C'MON!" The individual with the helmet with the American flag skull and the other individual to Crowley's left were with Crowley as he made his way to the tunnel from the northwest lawn.*

By 4:17 p.m., he had made his way into the mouth of the tunnel.



By 4:20 p.m., he had pushed his way inside a second time and was engaging in heave-ho efforts along with other rioters against the police line.



About 23 seconds later, the police expelled Crowley from the tunnel again after they appeared to release some form of gas or spray. However, Crowley was still determined to break

through the police line and by about 4:28 p.m. he again began walking toward the mouth of the

tunnel. This time, the outline of his tactical vest was clearly visible, as was his tactical belt along

with a pouch hanging from his arm.



*Crowley (circled in red) on the far right with bulging jacket and tactical belt.*

He shows his face briefly at the threshold of the tunnel around 4:32 p.m..



However, he appears to have irritated his eye from spray or gas and moves to a railing near the mouth of the tunnel to rest and recover. At around 4:34 p.m., Crowley walked away from the tunnel for the third and final time. Shortly thereafter he was seen walking away from the Capitol with fellow rioters in tactical gear. At 4:49 p.m., one of his companions washed out Crowley's eyes on the West Front.

As Crowley was leaving the Capitol Grounds, one of his compatriots was carrying a police riot shield. The individuals he was with as he was exiting were also with Crowley during one of Crowley's three appearances at the mouth of the tunnel:



*Crowley leaving the Capitol with two rioters in tactical gear in front of him, one of whom is carrying a police riot shield.*

Later that day, Crowley received a phone message from his wife asking him how he was doing. Crowley responded at 5:29 p.m., "good babe ,how are you?" He followed that message up with a picture of himself smiling and wearing a tactical vest and baseball cap. The same tactical vest was recovered during the lawful search of Crowley's home.  His eyes appeared swollen, and one eye was partially shut:



When he sent his wife another selfie at 8:18 p.m. EST, she responded 22 minutes later stating, "Your eyes are still swollen 😞😟".

At 3:37 p.m. EST, a contact reached out to Crowley asking, "Crowley you in DC?" Crowley replied at 5:35 p.m. "I'm there!" and attached the following two pictures taken at the mouth of the tunnel:



At 7:06 p.m. EST, he followed up the pictures with this message:



In the same chat, one of Crowley's contacts wrote back, "You got sprayed?" Crowley answered with the following string of messages and pictures:













The next day, January 7, 2021, at 1:04 p.m., Crowley told the same chat, "I eat my words, antifa was in capital, they were Antifa with some Patriots mixed in people say cops stood while they let a couple of handfuls of people in" and 14 seconds later he added, "and then shut it down." The other chat participants followed Crowley's comments with "They got paid to do it," "Soros," "This county is so damn beautiful I love the smell of Fear," "Fear sells," and finally "When do we

start the raping?" In response to "When do we start the raping?" Crowley wrote at 1:06 p.m. "and

pillageing [sic]":



## II. The Government's Proof

### A. Charges Against the Defendant

This defendant is charged as follows:

<u>Count One</u>: 18 U.S.C. § 231(a)(3), Civil Disorder

<u>Count Two</u>: 18 U.S.C. § 641 and 2, Theft of Government Property and Aiding and Abetting

<u>Count Three</u>: 18 U.S.C. § 1752(a)(1), Entering and Remaining in a Restricted Building or

Grounds


<u>Count Six</u>: 18 U.S.C. § 1752(a)(2), Disorderly and Disruptive Conduct in a Restricted

Building or Grounds

Count Nine: 18 U.S.C. § 1752(a)(4), Engaging in Physical Violence in a Restricted Building or Grounds.

Count Twelve: 40 U.S.C. § 5104(e)(2)(E), Impeding Passage Through the Capitol Building or Grounds

### B. Elements of the Crimes Alleged

### 18 U.S.C. § 231(a)(3)

Count One charges the defendant with obstructing law enforcement officers during a civil disorder, which is a violation of federal law.

Elements

In order to find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant knowingly committed an act with the intended purpose of obstructing, impeding, or interfering with one or more law enforcement officers.

Second, at the time of the defendant's act, the law enforcement officers were engaged in the lawful performance of their official duties incident to and during a civil disorder.

Third, the civil disorder in any way or degree obstructed, delayed, or adversely affected commerce or the movement of any article or commodity in commerce, or the conduct or performance of any federally protected function.[6]

---

[6] The parties have stipulated that if the government proves there was a civil disorder, the civil disorder "obstructed, delayed, or adversely affected commerce or the movement of any article or commodity in commerce" and "adversely affected […] federally protected function[s]." *See* ECF 91.

Definitions

The term "civil disorder" means any public disturbance involving acts of violence by groups of three or more persons, which (a) causes an immediate danger of injury to another individual, (b) causes an immediate danger of damage to another individual's property, (c) results in injury to another individual, or (d) results in damage to another individual's property.

The term "commerce" means commerce or travel between one state, including the District of Columbia, and any other state, including the District of Columbia.  It also means commerce wholly within the District of Columbia.[7]

The term "federally protected function" means any function, operation, or action carried out, under the laws of the United States, by any department, agency, or instrumentality of the United States or by an officer or employee thereof.[8]

The term "department" includes one of the departments of the executive branch (such as the Department of Homeland Security, which includes the United States Secret Service) or the legislative branch. The term "agency" includes any department, independent establishment, commission, administration, authority, board, or bureau of the United States. The term "instrumentality" includes any other formal entity through which the government operates, such as Congress or the United Sates Capitol Police.[9]

---

[7] Modified definition of 18 U.S.C. § 232(2) from jury instructions in *United States v. Pugh*, 20-cr-73 (S.D. Ala. May 19, 2021); *see also United States v. Schwartz, et al.*, 21-cr-178 (APM) (ECF No. 172 at 18); *United States v. Thomas*, 21-cr-552 (DLF) (ECF No. 150 at 21).

[8] *See* 18 U.S.C. § 232(3).

[9] *See, e.g.*, *United States v. Water Supply & Storage Co.*, 546 F. Supp. 2d 1148, 1152 (D. Colo. 2008) ("'When Congress does not define a word, its common and ordinary usage may be obtained by reference to a dictionary.' *In re Overland Park Fin. Corp.*, 236 F.3d 1246, 1252 (10th Cir. 2001) (citation omitted). Dictionary definitions of the word 'instrumentality' generally are broad. Black's Law Dictionary defines 'instrumentality' as '[a] thing used to achieve an end or purpose.' Black's Law Dictionary 814 (8th ed. 1999). Webster's Third New International

For the U.S. Capitol Police and Metropolitan Police Department on January 6, 2021, the term "official duties," means policing the U.S. Capitol Building and Grounds, and enforcing federal law and D.C. law in those areas.[10]

A person acts "knowingly" if he realizes what he is doing and is aware of the nature of his conduct, and does not act through ignorance, mistake, or accident.   In deciding whether the defendant acted knowingly, you may consider all of the evidence, including what the defendant did, said, or perceived.[11]

---

Dictionary defines 'instrumentality' as 'something by which an end is achieved' or "something that serves as an intermediary or agent through which one or more functions of a controlling force are carried out.' Webster's Third New International Dictionary 1172 (1971).").  For January 6 cases using this instruction, see *United States v. Gietzen*, 22-cr-116 (CJN) (ECF No. 50 at 23) and *United States v. Alam*, 21-cr-190 (DLF) (ECF No. 104 at 26).

[10] *United States v. Schwartz, et al.*, 21-cr-178 (APM) (ECF No. 172 at 19). *See, e.g.*, Fifth Circuit Pattern Criminal Jury Instruction No. 2.07; Tenth Circuit Pattern Criminal Jury Instruction No. 2.09; Eleventh Circuit Pattern Criminal Jury Instruction No. O1.1; *United States v. Smith*, 743 F. App'x 943, 949 (11th Cir. 2018) ("Furthermore, the district court instructed the jury regarding the Task Force's duties, stating: 'A member of the U.S. Marshals Regional Fugitive Task Force is a Federal officer and has the official duty to locate and apprehend fugitives.'"); *United States v. Green*, 927 F.2d 1005, 1008 (7th Cir. 1991) ("Given the sweep of the phrase 'official duties,' the district court did not err in instructing the jury that the duties of a federal prison employee, even a food service worker, extend to 'safekeeping, protection and discipline.'"); *United States v. Span*, 970 F.2d 573, 581 (9th Cir. 1992) ("The instruction states only that the activity of looking for a suspect is official conduct. We find no error in the district court's instruction characterizing this aspect of the marshals' conduct as official duty."); *United States v. Ellsworth*, 647 F.2d 957, 963 (9th Cir. 1981) ("'Instruction No. 10. Among the official duties of officers and agents of the United States Geological Service of the United States Interior Department are inspections of oil drilling apparatus to insure compliance with various Federal laws.' We think the above language of the charge employed by the trial judge reveals no insufficiency in defining the offense.").

[11] *See* The William J. Bauer Pattern Criminal Jury Instructions of the Seventh Circuit §§ 1512 & 1515(a)(1); *see also Arthur Andersen LLP v. United States*, 544 U.S. 696, 705 (2005); *United States v. Carpenter*, 21-cr-305 (JEB) (ECF No. 97 at 11) (including instruction that the evidence to be considered includes "what [the defendant] did, said, or perceived"); *United States v. Kelly*, 21-cr-708 (RCL) (ECF No. 101 at 9) (same); *United States v. Gunby*, 21-cr-626 (PLF) (ECF No. 57 at 7 (holding, in a January 6 case charging offenses under 18 U.S.C. § 1752 and 40 U.S.C. § 5104, that "what [the defendant] witnessed is directly relevant to his knowledge and intent") (citing *United States v. Griffith*, 21-cr-244, 2023 WL 2043223, at *3 (D.D.C. Feb. 16, 2023) and *United States v. Rhine*, 21-cr-687, 2023 WL 2072450, at *7 (D.D.C. Feb. 17, 2023)).

## 18 U.S.C. § 641 – THEFT OF GOVERNMENT PROPERTY[12]

### (18 U.S.C. § 641)

Count 2 of the Indictment charges the defendant with theft of United States government property, specifically, a United States Capitol Police riot shield, which is a violation of federal law.

Count 2 also charges the defendant with aiding and abetting others to commit that offense.

Elements

In order to find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant knowingly stole, took,[13] embezzled, purloined, or converted to his own use a United States Capitol Police riot shield.

Second, a United States Capitol Police riot shield was property of some value, less than $1,000, belonging to the United States or any of its departments or agencies.[14]

Third, the defendant intended to deprive, without right, the United States government of the use or benefit of the United States Capitol Police riot shield.

It is not necessary to prove that the defendant knew that the United States government owned the property at the time of the wrongful taking.[15]

---

[12] *United States v. Barnett*, 21-cr-38 (CPC) (ECF No. 158 at 24).

[13] *United States v. Thompson*, 21-cr-161 (RBC) (ECF No. 83 at 29).

[14] The parties have stipulated to this element. *See* Parties' Stipulations, ECF 97.

[15] *See, e.g.*, Fifth Circuit Model Criminal Jury Instruction No. 2.27; Eighth Circuit Model Criminal Jury Instruction No. 6.18.641; Eleventh Circuit Model Criminal Jury Instruction No.

## AIDING AND ABETTING[16]

In this case, the government further alleges that the defendant theft of government property, as charged in Count Two, by aiding and abetting others in committing this offense. This is not a separate offense but merely another way in which the government alleges that the defendant committed this offense in Count Two.

A person may be guilty of an offense if he aided and abetted another person in committing the offense. A person who has aided and abetted another person in committing an offense is often called an accomplice. The person whom the accomplice aids and abets is known as the principal. It is not necessary that all the people who committed the crime be caught or identified. It is sufficient if you find beyond a reasonable doubt that the crime was committed by someone and that the defendant knowingly and intentionally aided and abetted that person in committing the crime.

In order to find the defendant guilty of theft of government property because the defendant aided and abetted others in committing this offense, you must find that the government proved beyond a reasonable doubt the following elements:

First, that others committed theft of government property by committing each of the elements of the offense charged, as I have explained above.

Second, that the defendant knew that theft of government property was going to be committed or was being committed by others.

Third, that the defendant performed an act or acts in furtherance of the offense.

---

O21; *United States v. Speir*, 564 F.2d 934, 937-38 (10th Cir. 1977); *Baker v. United States,* 429 F.2d 1278, 1279 (9th Cir. 1970).

[16] 18 U.S.C. § 2(a); Third Circuit Model Jury Instructions 7.02. *See United States v. Fellows*, 21-cr-83 (TNM) (ECF No. 140 at 29-31).

Fourth, that the defendant knowingly performed that act or acts for the purpose of aiding, assisting, soliciting, facilitating, or encouraging others in committing the offense of theft of government property.

Fifth, that the defendant did that act or acts with the intent that others commit the offense of theft of government property.

To show that the defendant performed an act or acts in furtherance of the offense charged, the government must prove some affirmative participation by the defendant which at least encouraged others to commit the offense. That is, you must find that the defendant's act or acts did, in some way, aid, assist, facilitate, or encourage others to commit the offense. The defendant's act or acts need not further aid, assist, facilitate, or encourage every part or phase of the offense charged; it is enough if the defendant's act or acts further aided, assisted, facilitated, or encouraged only one or some parts or phases of the offense. Also, the defendant's acts need not themselves be against the law.

In deciding whether the defendant had the required knowledge and intent to satisfy the fourth requirement for aiding and abetting, you may consider both direct and circumstantial evidence, including the defendant's words and actions and other facts and circumstances. However, evidence that the defendant merely associated with persons involved in a criminal venture or was merely present or was merely a knowing spectator during the commission of the offense is not enough for you to find the defendant guilty as an aider and abettor. If the evidence shows that the defendant knew that the offense was being committed or was about to be committed but does not also prove beyond a reasonable doubt that it was the defendant's intent and purpose to aid, assist, encourage, facilitate, or otherwise associate the defendant with the offense, you may not find the defendant guilty of theft of government property as an aider and abettor. The

government must prove beyond a reasonable doubt that the defendant in some way participated in the offense committed by others as something the defendant wished to bring about and to make succeed.

## ENTERING OR REMAINING IN A RESTRICTED BUILDING OR GROUNDS[17]
### (18 U.S.C. § 1752(a)(1))

Count Three of the Indictment charges the defendant with entering or remaining in a restricted building or grounds, which is a violation of federal law.

Elements

In order to find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant entered or remained in a restricted building or grounds without lawful authority to do so.

Second, the defendant did so knowingly.

Definitions

The term "restricted building or grounds" means any posted, cordoned off, or otherwise restricted area of a building or grounds where a person protected by the Secret Service is or will be temporarily visiting.

The term "person protected by the Secret Service" includes the Vice President and the immediate family of the Vice President.

The term "knowingly" has the same meaning described in the instructions for Count One.

---

[17] 18 U.S.C. §§ 1752, 3056; *United States v. Jabr*, 4 F.4th 97, 101 (D.C. Cir. 2021). For January 6 cases using similar instructions, see *United States v. Eicher*, 22-cr-38 (BAH) (ECF No. 82 at 6); *United States v. Lesperance, et al.*, 21-cr-575 (JDB) (ECF No. 96 at 26); *United States v. Chwiesiuk, et al.*, 21-cr-536 (ACR) (ECF No. 103 at 8-9); *United States v. Gietzen*, 22-cr-116 (CJN) (ECF No. 50 at 30).

## DISORDERLY OR DISRUPTIVE CONDUCT IN A RESTRICTED BUILDING [18]

(18 U.S.C. § 1752(a)(2))

Count Six of the Indictment charges the defendant with disorderly or disruptive conduct in a restricted building or grounds, which is a violation of federal law.

Elements

In order to find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant engaged in disorderly or disruptive conduct in, or in proximity to, any restricted building or grounds.

Second, the defendant did so knowingly, and with the intent to impede or disrupt the orderly conduct of Government business or official functions.

Third, the defendant's conduct occurred when, or so that, his conduct in fact impeded or disrupted the orderly conduct of Government business or official functions.[19]

Definitions

"Disorderly conduct" is conduct that tends to disturb the public peace or undermine public safety.[20] Disorderly conduct includes when a person acts in such a manner as to cause another

---

[18] 18 U.S.C. § 1752. For January 6 cases using similar instructions, see *United States v. Eicher*, 22-cr-38 (BAH) (ECF No. 82 at 6-7); *United States v. Lesperance, et al.*, 21-cr-575 (JDB) (ECF No. 96 at 27); *United States v. Chwiesiuk, et al.*, 21-cr-536 (ACR) (ECF No. 103 at 9); *United States v. Gietzen*, 22-cr-116 (CJN) (ECF No. 50 at 32).

[19] The parties have stipulated that the certification of the electoral college vote was the "orderly conduct of Government business or official functions. *See* ECF 91.

[20] *United States v. Grider*, 21-cr-22 (CKK) (ECF No. 150 at 24) ("'[D]isorderly' conduct is that which 'tends to disturb the public peace, offend public morals, or undermine public safety.' 'Disorderly,' *Black's Law Dictionary* (9th ed. 2009); *see also* 'Disorderly,' *Oxford English Dictionary* (2nd ed. 1989) ('Not according to order or rule; in a lawless or unruly way; tumultuously, riotously.')").

person to be in reasonable fear that a person or property in a person's immediate possession is likely to be harmed or taken, uses words likely to produce violence on the part of others, or is unreasonably loud and disruptive under the circumstances.[21]

"Disruptive conduct" is a disturbance that interrupts an event, activity, or the normal course of a process.[22]

The terms "restricted building or grounds" and "knowingly" have the same meanings described in the instructions for Count Three.

## ENGAGING IN PHYSICAL VIOLENCE IN A RESTRICTED BUILDING OR GROUNDS [23]

(18 U.S.C. § 1752(a)(4))

Count Nine of the Indictment charges the defendant with engaging in physical violence in a restricted building or grounds, which is a violation of federal law.

Elements

In order to find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant engaged in an act of physical violence against a person or property in, or in proximity to, a restricted building or grounds.

Second, the defendant did so knowingly.

---

[21] *United States v. Schwartz, et al,*, 21-cr-178 (APM) (ECF No. 172 at 27); *United States v. Gietzen*, 22-cr-116 (CJN) (ECF No. 50 at 32); *United States v. Alam*, 21-cr-190 (DLF) (ECF No. 104 at 237-38).

[22] Redbook 6.643.

[23] *United States v. Schwartz, et al.*, 21-cr-178 (APM) (ECF No. 172 at 30); *United States v. Gietzen*, 22-cr-116 (CJN) (ECF No. 50 at 34); *United States v. Alam*, 21-cr-190 (DLF) (ECF No. 104 at 40).

Definitions

The term "act of physical violence" means any act involving an assault or other infliction of bodily harm on an individual; or damage to, or destruction of, real or personal property.

The terms "restricted building or grounds" and "knowingly" have the same meanings described in the instructions for Count Three.

## OBSTRUCTING OR IMPEDING PASSAGE THROUGH THE CAPITOL BUILDING OR GROUNDS

### 40 U.S.C. § 5104(e)(2)(E)

Count Twelve of the Indictment charges the defendant with obstructing or impeding passage through the Capitol Building or Grounds, which is a violation of federal law.

Elements

In order to find the defendant guilty of this offense, you must find that the government proved each of the following elements beyond a reasonable doubt:

First, the defendant obstructed or impeded passage through or within the Capitol Buildings or Grounds.

Second, the defendant acted willfully and knowingly.

Definitions

The term "Capitol Buildings" includes the United States Capitol located at First Street, Southeast, in Washington, D.C. The "Capitol Grounds" are defined by the United States Code, which refers to a 1946 map on file in the Office of the Surveyor of the District of Columbia. The boundaries of the Capitol Grounds include all additions added by law after that map was recorded. The Capitol Grounds includes the portion of Pennsylvania Avenue Northwest from the west curb of First Street Northwest to the curb of Third Street Northwest. Also, the "Capitol Grounds" includes the area depicted in Government's Exhibit 500.

The term "knowingly" has the same meaning as in Count Three.

A person acts "willfully" if he acts with the intent to do something that the law forbids, that is, to disobey or disregard the law. "Willfully" does not, however, require proof that the defendant be aware of the specific law or rule that his conduct may be violating.[24]

### C. Proposed Stipulated Testimony

The government has proposed submitting the following two transcripts as evidence in this case:

In *United States v. Couy Griffin*, 21-cr-00092-TNM (March 21-22, 2022), this Court heard the testimony of United States Secret Service (USSS) Inspector Lanelle Hawa. Inspector Hawa testified regarding the restricted perimeter surrounding the U.S. Capitol building and grounds on January 6, 2021. She also testified regarding the presence of then Vice President Pence and his immediate family, and how they were protectees of the secret service at the U.S. Capitol on January 6, 2021. She testified about how Vice President Pence, and his family were evacuated from the Senate Chamber, but remained within the restricted perimeter from the afternoon of January 6, 2021, until the morning of January 7, 2021.

In *United States v. Quaglin et al,* 21-cr-40 (TNM) (July 10, 2023), this Court heard the testimony of United States Capitol Police (USCP) Lieutenant George McCree. Lieutenant McCree testified regarding being on duty on January 6, 2021, and being assigned to the House Chamber area of the U.S. Capitol. He testified that on January 6, 2021, he was physically present with members of the United States House of Representatives in the House Gallery for the certification of the Electoral College vote. He was present when that area of the Capitol building was deemed insecure and the USCP asked the parliamentarians in both Houses to recess Congress. He testified

---

[24] *See United States v. Bryan*, 524 U.S. 184, 190 (1998).

that members of the House of Representatives were sheltered in place due to the breach of the Capitol building and that Congress was able to resume proceedings on the floor cumulatively, between the two, after 8 o'clock that evening. He testified about his familiarity with the video surveillance system and radio communications systems. He provided an overview of the Capitol and the events of January 6, 2021. He also identified the restricted perimeter of the Capitol grounds set up in anticipation of the demonstration on January 6, 2021. He testified about the physical barriers that manifested the restricted perimeter, particularly on the west side of the Capitol building on January 6, 2021.

To save time, and to focus on the matters that will likely be in dispute, the government intends – upon agreement by defense counsel – to offer into evidence a transcript of Inspector Hawa's testimony and the accompanying exhibits from *Griffin* as well as a transcript of Lieutenant McCree's testimony and the accompanying exhibits from *Quaglin*.

### D. Trial Stipulations

The government and defendant have stipulated to the following facts: (1) the certification of the electoral college vote; (2) the riot shields as property of the United States of some value; (3) the events on the Capitol Grounds adversely affected interstate commerce[25]; (5) the events affected a "federally protected function." [26] *See* ECF 91. The parties have also agreed to the following stipulations: (1) authenticity of defendant's cell phone contents and the use of proper

---

[25] There is no stipulation that there was a civil disorder. However, defendant agrees that the events occurring on Capitol Grounds on January 6 adversely affected interstate commerce.

[26] There is no stipulation that there was a civil disorder. However, defendant agrees that the events occurring on Capitol Grounds on January 6 adversely affected federally protected functions.

and reliable techniques to extract cell phone data; (2) the admission of the CAST report; (3) the authenticity of defendant's social media. *See* ECF 97.

There is no stipulation to the following facts: (1) the Restricted Area;[27] (2) USCP and MPD were engaged in lawful performance of their official duties as employees of the United States on January 6, 2021; (3) the authenticity of CCTV video; (4) the authenticity of body-worn camera video; (5) the authenticity of open-source video; (6) identification of the defendant as he appeared on January 6, 2021 on the Capitol Grounds.

The parties are discussing the following to see if they will be able to stipulate: (1) admission into evidence of certain prior testimony of USCP and USSS witnesses; (2) the proper chain of custody regarding items seized pursuant to lawfully executed search warrants; (3) the authenticity of Hilton and AT&T records.

### Summary of Expected Testimony

#### A.  Witnesses the Government Will Call

#### 1.  Task Force Officer Neville Arthur

The government will present testimony from FBI Task Force Officer Neville Arthur. TFO Arthur has investigated John Edward Crowley. Through his investigation of Crowley, TFO Arthur has reviewed USCP CCTV footage, MPD Body Worn Camera (BWC) footage, private citizen recordings, and publicly available open-source video of John Edward Crowley. TFO Arthur was present at the arrest of Mr. Crowley. TFO Arthur has also reviewed the items seized from Mr. Crowley's home, the contents of Mr. Crowley's phone, the GoDaddy subpoena return, the AT&T

---

[27] Defendant would agree to stipulate to the restricted area only if the stipulation indicated that nothing within the stipulation "constitutes an agreement with regard to John Edward Crowley's knowledge of the restricted area." The government informed defendant that the language was unnecessary as Mr. Crowley may still assert his lack of knowledge. However, the defendant would not agree without language concerning his lack of knowledge.

search warrant returns, the Hilton subpoena returns, Mr. Crowley's Instagram account, and the CAST report. The government will present testimony from TFO Arthur regarding defendant's identification, the videos from the Capitol on January 6, 2021, his cellular device, social media account(s), the items recovered from defendant's residence, the CAST report, AT&T records, Hilton records, and GoDaddy records. To the extent the parties do not stipulate, TFO Arthur will testify to the proper chain of custody regarding items seized pursuant to lawfully executed search warrants.

### 2. Inspector Lanelle Hawa, USSS[28]

Inspector Hawa was on duty and present at the U.S. Capitol on January 6, 2021. At that time, she was assigned to the Liaison Division of the United States Secret Service. Inspector Hawa is familiar the restricted perimeter surrounding the U.S. Capitol building and grounds. She has personal knowledge of the presence of then Vice President (V.P.) Pence and his immediate family for the Joint Session of Congress that was gathering for the Electoral College vote, and that V.P. Pence and his immediate family were protectees of the Secret Service at the U.S. Capitol on January 6, 2021. Inspector Hawa may testify as to – but not limited by – the timeline of January 6, 2021; security breaches that occurred on the Capitol grounds and in the Capitol building, about how V.P. Pence and his family were evacuated from the Senate Chamber but remained within the restricted perimeter from the afternoon of January 6, 2021 until the morning of January 7, 2021

---

[28] The testimony may be circumscribed, depending on what, if any, additional stipulations the parties sign.

due to the breach of the U.S. Capitol building and grounds; and that until the grounds and building were deemed safe, the Vice President did not return to the Senate Chamber.

### 3.  Lieutenant George McCree, USCP[29]

Lieutenant McCree was on duty and present at the U.S. Capitol on January 6, 2021.  At that time, he was assigned to the House Chamber area of the U.S. Capitol.  Lt. McCree was physically present with members of the United States House of Representatives in the House Gallery at or near the time of the defendant's charged conduct on U.S. Capitol grounds.  He is familiar with the video surveillance system and radio and phone communications systems.  He will provide an overview of the Capitol and the events of the day, including a description of the restricted perimeter and identify a map of the U.S. Capitol's restricted perimeter.  Lt. McCree may testify as to – but not limited by – the timeline of January 6, 2021; the existence and perimeter of the restricted grounds and the barriers, such as racks, fencing, and "Area Closed" signs; the interactions between rioters and law enforcement at relevant locations on Capitol grounds, such as the Lower West Terrace; and his personal experience at the Capitol during the breach, including evacuation of members of the House of Representatives. Lt. McCree may also testify that former Vice President Michael Pence, a U.S. Secret Service protectee, was visiting the Capitol on January 6, 2021. Lt. McCree may testify regarding the congressional proceedings that took place on January 6, 2021, including the interruption caused by the rioters.

### 4.  Officer Henry Foulds, MPD

MPD Officer Foulds was on duty as a member of Civil Disturbance Unit (CDU) 74 on January 6, 2021. Officer Foulds is expected to testify regarding his experience generally on

---

[29] The testimony may be circumscribed, depending on what, if any, additional stipulations the parties sign.

January 6, which included protecting the Capitol on the Upper West Plaza, as well as in the LWT tunnel.

Officer Foulds may also testify to his experience defending the Capitol inside the tunnel, including the effects of being in constant battle with the rioters. He will testify to the authenticity of video showing the events in the tunnel.  He may testify as to – but not limited by – his experience with Crowley in the tunnel. Officer Foulds testimony will establish that Crowley was pushing *directly against him* at that time, and that Crowley continued to push against him even after being sprayed by another officer. Officer Foulds will testify that he does not recall Crowley telling him he wanted to leave the tunnel. Officer Foulds will testify that Crowley was obstructing, impeding, and/or interfering with his ability to do his job on January 6, 2021. Officer Foulds will further testify about the uses of a riot shield.

### 5.   Other Officers

Several other officers—Sergeant Jason Mastony, Ofc. Mustafa Ak, and Ofc. Neil McAllister—may testify to the authenticity of video taken at or near the tunnel on January 6, 2021. The officers may also testify generally that they were on duty on January 6, 2021, and to the actions they witnessed of rioters and how the rioters' actions obstructed and impeded their ability to protect the Capitol building and the protected parties inside the Capitol on that day.

### 6.   Other Witnesses

 If necessary, the government may also call FBI Special Agent Jaime Garman to discuss the CAST Report, FBI CART Examiners Gregory Tarbert and Princessa Slaughter to discuss Crowley's phone and its extraction, and Evidence Technician Robin Wilks and Special Agent Brian Hock to discuss chain of custody of items taken from Mr. Crowley's home.

### E.  Video Evidence

The government will present much of its evidence through video footage that captured the defendants on the Capitol grounds on January 6, 2021. The video includes U.S. Capitol Police surveillance, MPD body worn camera footage, open source and third-party footage that can be cross-corroborated.

In order to move the case forward expeditiously, the government has annotated clips it intends to introduce at trial. The annotated clips show where Crowley is located in the crowd and use side-by-side and zoom functions. The annotated clips will be provided to defendant when they are completed. Defendant has already been provided with the unannotated clips.

### F.  Demonstrative Exhibits and Physical Evidence

The government intends to present the following physical exhibits relevant to this case and recovered from Mr. Crowley's home pursuant to search warrant: (1) USA baseball cap, (2) black plate carrier/vest, (3) tactical belt with med pouch, (4) tan gear belt, (5) green/tan plate carrier/vest, (6) Guardians of Freedom, American Flag, and 3 Percenter patches, and (7) the black and green scarf. The government intends to introduce these items in order to identify the individual in the videos as Mr. Crowley. The evidence is also relevant to show intent to engage in disorderly conduct and physical violence on restricted grounds as well as to show defendant's intent to obstruct, impede, and interfere with law enforcement. The government may also introduce the following physical exhibits relevant to this case and recovered from Mr. Crowley's home pursuant to search warrant (1) scarf and a skull scarf/gaiter, (2) a brown ledger, (3) Guardians of Freedom material and folder,  (4) a cellphone, and (5) the contents of the Guardians of Freedom folder, plate carrier/vest, tactical belt and med pouch, gear belt, and green/tan vest.

As a demonstrative exhibit, the government may introduce a riot shield to show the court a shield similar to the one defendant took on January 6, 2021.

### G.  902(11) Notice

The government has provided a Rule 902(11) Notice to defense counsel. This Notice indicates that, to promote efficiency at trial, the government intends to introduce into evidence certain business records pursuant to Federal Rules of Evidence ("FRE") 902(11) and 803(6) in lieu of calling records custodians for authentication. The government has also proposed a stipulation to the authenticity and accuracy of these records and that the records were kept in the regularly conducted business activity that meet the requirements of FRE 902(11).

## III.   ANTICIPATED DEFENSES AND LEGAL ARGUMENTS

The government anticipates that the central questions will relate to the defendants' intent to commit civil disorder, disorderly conduct, and physical violence. The video evidence will show that defendant entered the tunnel intentionally twice and intended to enter a third time but did not do so. Each time he entered video shows him pushing against the police line in the crushing confines of the tunnel. Second, the evidence will show the grounds were clearly marked as restricted. There was fencing, signs, a dispersal order, etc. Should defendant argue he did not see these clear indications, he still knew that the area was restricted because he saw police blocking the tunnel's entrance and violent rioters attacking the police there before he entered inside. Furthermore, he encountered police who twice expelled him from the tunnel. The defendant intended to deprive the government of the use of the shield because video evidence shows he passed it behind him to the mob rather than handing it back to the officers in front of him or simply leaving it alone.

## IV.   CONCLUSION

The defendant was aggressive, violent, and an active participant in the riot at the U.S. Capitol on January 6, 2021. Acting together and with others around him, he obstructed, impeded,

and interfered with police. At trial, the evidence will prove beyond a reasonable doubt that the

defendant committed each offense charged in the Indictment.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney


By:     /s/ Joshua Ontell
        JOSHUA ONTELL
        Assistant United States Attorney

        HOLLY GROSSHANS
        Assistant United States Attorney